```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA         :
                                            MEMORANDUM DECISION
       - against -                :
                                            02 Cr. 00939-3(DC)
VERNON SNYPE,                    :

              Defendant.          :

- - - - - - - - - - - - - - - - - -x


APPEARANCES:        AUDREY STRAUSS, ESQ.
                    United States Attorney for the
                    Southern District of New York
                         By:  Patrick R. Moroney, Esq.
                              Assistant United States Attorney
                    One Saint Andrew's Plaza
                    New York, NY 10007

                    VERNON SNYPE
                    Defendant Pro Se
                    Reg. No. 42333-054
                    F.C.I. Allenwood
                    P.O. Box 2000
                    White Deer, PA 17887
```

**CHIN, Circuit Judge:**

By two separate letters filed on December 2, 2020, defendant Vernon Snype, proceeding pro se, moves for compassionate release and a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government opposes both of Snype's motions. For the reasons set forth below, the motions are denied.

**BACKGROUND**

I. <u>The Underlying Offense</u>

On July 6, 2002, Vernon Snype and William Partlow stole a vehicle from a parking attendant at gunpoint and drove to First Union Bank in Yonkers, New York. PSR ¶¶ 14-16. There, they were accompanied by three accomplices, who sat in two separate cars outside the bank and acted as lookouts. PSR ¶ 15. Snype and Partlow then entered the bank, armed with guns, and stole $35,000 after threatening the bank staff and customers at gunpoint, PSR ¶¶ 14, 16.

With police en route to the bank, Snype and Partlow fled from the scene by car; the three lookouts also fled in two separate cars. PSR ¶¶ 15-19. A high-speed chase ensued on the highway, with Snype and Partlow shooting their guns at the police cars chasing them. PSR ¶ 17. Snype claims to have fired these shots at the ground, rather than aiming at the police cars, in hopes that the officers would pull back. D. Ct. Dkt. No. 126 at 2. Eventually, the car crashed, and Snype and Partlow continued to flee on foot. PSR ¶ 17. Partlow was found and shot and killed by police, while Snype escaped and was not arrested until July 11, 2002, five days later. PSR ¶¶ 17, 24. When he was arrested, Snype was in possession of $20,000, much of which was still wrapped in First Union Bank money bands, fake identification cards, and two loaded firearms in a bag that

2

matched the description of the one used at the robbery.  PSR ¶ 24.

Snype, who was 41 years old at the time, was in a relationship with his partner, Laureen Flowers, who, according to Snype, was diagnosed with paranoid schizophrenia in 2000.  D. Ct. Dkt. No. 125 at 1.  Snype, however, left his partner prior to the robbery.  Id. at 1-2.  He says he participated in the robbery so that he would have enough money to "get [his] own apartment and not have to deal with [his partner's] behavior."  Id. at 2.  It is unclear whether Snype and his partner ever reconciled after Snype's 2002 arrest.

## II.  Prior Proceedings

Snype was indicted for conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; bank robbery and armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  Dkt Nos. 6, 26, 130, Ex. B. at 8.  A jury found Snype guilty of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371, but it was unable to reach a verdict on the remaining counts and I declared a mistrial as to those counts.  United States v. Snype, Nos. 07 Civ. 9490(DC), 02 Cr. 0939-3(DC), 2009 WL 2611930, at *2 (S.D.N.Y. Aug. 24, 2009).

At sentencing, I determined that I was required to sentence Snype to life imprisonment pursuant to 18 U.S.C. § 3559(c), also known as the "three strikes" law.  D. Ct. Dkt. No. 130, Ex. A at 14-15, 31.  Prior to the instant robbery, Snype had a string of criminal convictions, three of which qualified as "serious violent felonies":  (1) a 1980 conviction for robbery in the second degree, PSR ¶¶ 49-50; D. Ct. Dkt. No. 130, Ex. A at 12-13, (2) a 1981 conviction for attempted robbery in the first degree, PSR ¶¶ 57-59; D. Ct. Dkt. No. 130, Ex. A at 13-14, and (3) a 1983 conviction for robbery in the first degree, PSR ¶¶ 61-63, D. Ct. Dkt. No. 130, Ex. A at 14.  Snype served almost ten years in prison for the 1983 conviction and was released in December 1994.  PSR ¶ 64.

In addition to finding that Snype had been convicted of three "serious violent felonies," I also concluded that Snype's conviction of conspiracy to commit bank robbery under 18 U.S.C. § 371 was a qualifying offense under the three strikes law.  D. Ct. Dkt. No. 130, Ex. A at 2-3.  Hence, a sentence of life imprisonment was required; the Second Circuit affirmed the conviction and sentence.  See United States v. Snype, 441 F.3d 119, 153 (2d Cir. 2006).

III.  The Pending Motions

Snype has filed two separate motions:  the first is a motion for compassionate release pursuant to 18 U.S.C. §

3582(c)(1)(A).  D. Ct. Dkt. No. 125.  The second is a motion for a sentence reduction pursuant to the same statute.  D. Ct. Dkt. No. 126.  Because Snype is proceeding pro se, his motions must be liberally construed.  See McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156-57 (2d Cir. 2017).

Snype makes four principal arguments for release:  (1) he must care for his schizophrenic partner; (2) he has a higher risk of severe illness from COVID-19 due to his age and asthma; (3) he has significantly rehabilitated himself; and (4) his prior convictions were incorrectly classified as "serious violent felonies."  See generally D. Ct. Dkt. Nos. 125, 126, 131, 135.[1]

The Government does not dispute that Snype has exhausted his administrative remedies.  D. Ct. Dkt. No. 130 at 2.  The Government, however, disagrees with Snype that there are extraordinary and compelling reasons for compassionate release.  First, it disputes that Snype is the only available caregiver for his partner.  Id. at 3-4.  Second, it argues that, despite the fact that Snype's asthma might place him at an increased risk of severe illness, the risk does not constitute an extraordinary and compelling reason.  Id. at 4-5.  Lastly, the

---

[1]  Although two of Snype's filings were submitted after his deadline to respond, see D. Ct. Dkt. Nos. 131, 135, the Court has accepted them.

5

Government argues that Snype's "conviction for conspiring to violate 18 U.S.C. § 2113 is a 'serious violent felony.'"  Id. at 5.

**DISCUSSION**

I.  Request for Compassionate Release

  A.  Applicable Law

Where a defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court "may reduce [his] term of imprisonment . . . after considering the factors set forth in section 3553(a)" if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The Second Circuit has held that the First Step Act of 2018 "allows [district] courts independently to determine what reasons, for purposes of compassionate release, are extraordinary and compelling" and that the Director of the Bureau of Prisons ("BOP Director") is no longer the sole arbiter in determining whether the threshold is met.  See United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).  Historically, however, in the context of sentence-reduction motions brought by the BOP Director, "suffering from a serious physical or medical condition" or "incapacitation of the defendant's spouse or

6

registered partner when the defendant would be the only available caregiver for the spouse or registered partner" have been considered "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1(A)(ii)(I), (C)(ii).

As relevant here, Snype's mandatory life sentence does not bar this Court from granting compassionate release. See, e.g., United States v. Rodriguez, 00-CR-761-2(JSR), 2020 WL 5810161, at *8 (S.D.N.Y. Sept. 3, 2020) (granting compassionate release despite defendant's mandatory life sentence because defendant had been "totally rehabilitated" and had underlying health conditions that "increase[d] the risks associated with COVID-19"); United States v. Perez, 3:02-CR-7(JBA), 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021) ("Although [the defendant's] life sentences are mandatory, the mandatory component does not bar relief under the First Step Act."). Some courts, however, have hesitated in using the First Step Act to reduce mandatory life sentences. See, e.g., United States v. Castillo, 04-CR-408(KMW), 2021 WL 268638, at *3 (S.D.N.Y. Jan. 27, 2021) (denying compassionate release of a mandatory life sentence, in part, because the defendant would still be subject to a 90-year mandatory sentence were he sentenced today).

While courts in this Circuit have not granted a compassionate release motion for a mandatory life sentence imposed under the three strikes law, across the country, courts

are grappling with this question and have reached varied results. Some courts have found extraordinary and compelling reasons sufficient to reduce a mandatory life sentence imposed under the three strikes law. See United States v. Carroll, 98-CR-351(RLW), 2020 WL 8024485, at *7 (E.D. Mo. Sept. 14, 2020) (granting compassionate release when mandatory life sentence was premised on a robbery that the defendant committed when he was 16 years old); United States v. Williams, 3:04cr95/MCR, 2020 WL 1751545, at *4 (N.D. Fla. Apr. 1, 2020) (releasing a "seriously ill" defendant whose "prior offenses occurred more than 40 years ago").

Other courts have been more hesitant. See United States v. Spencer, 95-CR-659, 2020 WL 6504578, at *2 (E.D. Penn. Nov. 5, 2020) ("Even considering [the defendant's] age -- he is now sixty-four -- and his rehabilitation while in prison . . . the violent and repetitive nature of [the defendant's] offenses [which resulted in a three strikes life sentence] weigh against his release."); United States v. Martin, No. 98-178, 2020 WL 3960433, at *11 (E.D. Penn. July 13, 2020) (denying release because defendant's "violent criminal history, including twice committing violent crimes after serving long sentences, mandates against releasing him again"); Walker v. United States, 16-21973-Civ, 2020 WL 2308468, at *1 (S.D. Fla. May 8, 2020) ("Despite the severity of [the defendant's] alleged medical

condition, the Court finds such a [sentence] reduction, given the seriousness of his offenses and his criminal history, inappropriate at this time.").

    B.  Application

        1.  Extraordinary and Compelling Reasons for Relief

While there is some merit to Snype's arguments for compassionate release, I am not persuaded that Snype has demonstrated extraordinary and compelling circumstances.

I am sympathetic to Snype's arguments about needing to care for his partner. But Snype fails to meet the high standard required to show that he is the only person available who can act as his partner's caregiver. See, e.g., United States v. Myrick, No. 12-CR-385(ARR), 2020 WL 6128943, at *5 (E.D.N.Y. Oct. 19, 2020) (listing Second Circuit cases finding that compassionate release was unwarranted "when there may be other family members available to [provide care]"); United States v. Hasanoff, No. 10-CR-162(KMW), 2020 WL 6285308, at *3 (S.D.N.Y. Oct. 27, 2020) (granting motion when "ample evidence," including "affidavits, letters, and medical records" showed that movant "has become the only available caregiver" to his ailing mother).

Here, Snype's own words highlight the uncertainty of his argument. First, in his email conversations with his daughter, Snype says that his partner, who has refused care from medical professionals and his daughter, "will be stable when [he

9

is] home, and only when [he is] home," but then acknowledges that according to his daughter, his partner "has an attitude" towards him and is "mad" at him.  D. Ct. Dkt. No. 130, Ex. B at 11.  Second, while Snype highlights his newfound ability and desire to care for his partner suffering from mental illness, according to his own words, he committed the robbery to get his "own apartment and not have to deal with [his ex-partner's] behavior,"  D. Ct. Dkt. No. 126 at 2, and to "leave . . . the living condition that [he] was in."  Id. at 3.  While recognizing that people and relationships can evolve over time, based on these facts, I do not find that Snype has established that he is now the only available caregiver for his partner. After all, Snype has not been available to care for his partner for all the years since he has been incarcerated, and he will have his own challenges to face if and when he is released.

I am also cognizant that Snype is 60 years old and asthmatic, which places him at an increased risk of experiencing serious illness from COVID-19.  See D. Ct. Dkt. No. 125 at 3; Centers for Disease Control and Prevention, COVID-19: People at Increased Risk – People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  But the Bureau of Prisons (the "BOP") has made efforts to maintain the safety of the BOP's inmate population and staff in the face of "grave

and enduring" challenges stemming from the pandemic.  See Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, 954 F.3d 118, 135 (2d Cir. 2020).  As the Government also notes, the BOP has taken substantive steps to address the COVID-19 pandemic.  See D. Ct. Dkt. No. 130 at 4-5 (noting the suspension of visits, limiting of gatherings, increase of cleaning, sanitation, and medical supplies, etc.); Federal Bureau of Prisons, Modified Operations, https://www.bop.gov/coronavirus/ covid19_status.jsp.

And during Snype's most recent clinical visit on December 2, 2020, Snype reported that he "feels good" and "has no complaints."  D. Ct. Dkt. No. 130, Ex. D at 1.  Based on these facts, I do not find that Snype is suffering from a serious medical condition rising to the level of an extraordinary and compelling reason meriting compassionate release.

2.   The Section 3553(a) Factors

The Section 3553(a) factors also weigh against a sentence reduction here.  Reducing Snype's mandatory life sentence to a sentence of less than twenty years would not reflect the "seriousness of the offense," which began with the robbery of a parking attendant at gunpoint, continued with a violent holdup of a bank, and ended with Snype's firing shots at officers while fleeing by car.  See 18 U.S.C. § 3553(a)(2)(A);

see also D. Ct. Dkt. No. 126 at 2.  Snype argues that a bank robbery carries a maximum sentence of twenty years,[2] so his incarceration for almost 20 years is sufficient deterrence.  See D. Ct. Dkt. No. 131 at 4.  Snype's argument, however, fails to account for the applicability of 18 U.S.C. § 3559(c) to his sentencing, which required me to impose the life sentence and still weighs against the granting of compassionate release.

Additionally, the "history and characteristics of the defendant" showed that Snype had a propensity to commit armed robbery.  See 18 U.S.C. § 3553(a)(1); PSR at 1.  A lengthy sentence is necessary here to "afford adequate deterrence to criminal conduct," because a prior eleven-year prison stay did not deter Snype from participating in this armed robbery.  See 18 U.S.C. § 3553(a)(2)(B); D. Ct. Dkt. No. 130, Ex. A at 18.  Snype cites United States v. Clausen to posit that relying on his criminal convictions from forty years ago "provide[s] an outdated and incomplete glimpse" into his history.  D. Ct. Dkt. No. 131 at 3 (quoting United States v. Clausen, No. 00-291-2, 2020 WL 4601247, at *2 (E.D. Penn. Aug. 10, 2020)).  But Snype's crimes committed when he was a young man are still relevant in considering the section 3553(a) factors, and Snype committed his bank robbery as a 41-year-old, after having already served a

---

[2]   See 18 U.S.C. § 2113(a), which sets a statutory maximum sentence of twenty years' imprisonment for bank robbery.

12

lengthy prison sentence for similar crimes.  PSR ¶¶ 64, 85. Indeed, the bank robbery was committed less than eight years after completing that sentence.  Snype's history weighs heavily against early release.

II.  The Request to Vacate the Sentence

Snype's alternative argument that his sentence should be vacated is without merit.  Contrary to Snype's assertion, United States v. Davis, 139 S. Ct. 2319 (2019), did not hold that conspiracy offenses can never qualify as violent felonies -- instead, the Supreme Court held that a conspiracy offense could not be a crime of violence under 18 U.S.C § 924(c)(3)'s residual clause, which was unconstitutionally vague.  Id. at 2336.  Snype's conspiracy conviction is a "serious violent felony" not because of section 3559(c)(2)(F)'s residual clause, but because of its enumerated clause, which explicitly lists conspiracy to commit robbery under section 2113 as a "serious violent felony."  18 U.S.C. § 3559(c)(2)(F)(i); see also Davis, 139 S. Ct. at 2336 (noting that a statute "includ[ing] certain enumerated offenses" would avoid constitutional vagueness problems).

Snype's reference to United States v. Shabazz, No. 16-CV-1368, 2019 WL 3942975 (M.D. Penn. Aug. 21, 2019), which suggests that he also believes his previous convictions for robbery under New York state law do not constitute serious

13

violent felonies under section 3559(c)(2)(F)(ii), does not help him.[3] D. Ct. Dkt. No. 125 at 2. In Shabazz, the court held that it was possible for a defendant to be convicted of robbery under N.Y. Penal Law § 160.15 without the presence of the force element necessary to make it a "serious violent felony." 2019 WL 3942975, at *10. This court, however, is bound by the Second Circuit, which has held that all robberies have a sufficient force element "regardless of whether the force actually employed in the taking of the property is by itself sufficient to cause pain or injury." Shabazz v. United States, 912 F.3d 73, 77-78 (2d Cir. 2019) (interpreting Connecticut's statutory scheme for robbery, which is identical to New York's, in light of 18 U.S.C. § 924(e)(2)(B)'s force clause, which is identical to 18 U.S.C. § 3559(c)(2)(F)(ii)).

Moreover, the Second Circuit has held that Snype's New York State robbery convictions are serious violent felonies as enumerated offenses under section 3559(c)(2)(F)(i). See United States v. Snype, 441 F.3d 119, 149 (2d Cir. 2006) ("As for Snype's state robbery convictions, the state law definitions of the first and second degree robbery crimes referenced in the

---

[3]   In his response to the Government, Snype concedes that his "robbery convictions remain crimes of violence," but argues that these "offenses occurred over 40 years ago, and do not reflect [his] current behavior and characteristics." D. Ct. Dkt. No. 131 at 1.  This argument is addressed in the discussion of the Section 3553(a) factors, but I also distinguish Shabazz for clarity.

14

judgments of conviction plainly comport with the common definition of robbery in §§ 2111, 2113, and 2118, thereby bringing those state convictions within § 3559(c)(3)(F)(i).").

Finally, it should be noted that a different provision, 18 U.S.C. § 3582(c)(1)(A)(ii), allows the court to modify a defendant's sentence when (1) the defendant is 70 years of age; (2) he has served at least 30 years of his sentence; and (3) the BOP Director determines the defendant is not a danger to the safety of others.  I encourage Snype to continue his efforts to turn his life around,[4] and to file another motion, either under this provision when the time comes, or under § 3582(c)(1)(A)(i) again should circumstances change.

Accordingly, Snype's present motions are DENIED.

The Clerk of the Court shall terminate the motions at docket numbers 125 and 126.

SO ORDERED.

Dated:   New York, New York
         March 26, 2021

                                              s/Denny Chin
                                              DENNY CHIN
                                              United States Circuit Judge
                                              Sitting By Designation

---

[4]    Here, while Snype's rehabilitation is commendable, "rehabilitation alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 238.